IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 29, 2021

## STATE OF TENNESSEE v. AARON JOSEPH DINGUSS

**Appeal from the Criminal Court for Union County**
**No. 5532        E. Shayne Sexton, Judge**

_____

## No. E2020-01459-CCA-R3-CD

_____

The Defendant-Appellant, Aaron Joseph Dinguss, pled guilty to vehicular homicide and was sentenced by the trial court as a Range I offender to nine years in the Department of Correction. The sole issue the Defendant raises on appeal is whether the trial court erred in finding enhancement factor (10) applicable without proof that anyone other than the victim was placed at actual risk by the Defendant's conduct. We conclude that the trial court misapplied enhancement factor (10) because there was no proof of a high risk to the life of any human other than the victim, but that the nine-year sentence is nonetheless entitled to a presumption of reasonableness. Accordingly, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

Leif Jeffers, District Public Defender, and Brennen M. Wingerter, Assistant District Public Defender, for the Defendant-Appellant, Aaron Joseph Dinguss.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Jared R. Effler, District Attorney General, for the appellee, State of Tennessee.

## OPINION

At approximately 7:54 p.m. on January 8, 2019, the intoxicated nineteen-year-old Defendant was driving home from a lake in Union County with his best friend, Nathan Davis, as his only passenger when he lost control of his vehicle while negotiating a curve on Beard Valley Road, which caused the vehicle to strike a tree to the right of the roadway before spinning and landing in a ditch. No other vehicles were involved in the accident and the Defendant escaped without serious injury. Davis, however, was severely injured and died approximately one week later.

On January 27, 2020, the Defendant pled guilty to one count of vehicular homicide by intoxication, a Class B felony, with the sentencing to be determined by the trial court at a later sentencing hearing. Evidence introduced at the guilty plea hearing included: the accident report of Trooper John McKissack of the Tennessee Highway Patrol, which included a diagram that showed two driveways and several mailboxes a short distance before the crash site; laboratory tests that showed that the Defendant not only had marijuana in his system but also blood alcohol levels of .23 and .20, respectively, in successive blood draws performed that evening; and photographs of the crash site, which showed that the accident occurred on a two-lane paved road in a rural area just past two driveways and a mailbox located at the edge of the paved roadway.

At the sentencing hearing, Trooper McKissack testified that the area where the accident occurred was in a no passing zone on a two-lane road. When asked if he would describe it as a heavy residential area, he testified that there were residences along the road and that he recalled seeing the residence of a particular family that lived "just right over the little creek" in the area. He stated that Beard Valley Road was off Maynardville Pike, a state route that was the main thoroughfare in Union County.

The victim's mother, Julia Davis, described the victim as a kind, thoughtful and caring person who had made the decision to stop drinking alcohol following a minor traffic infraction that had led to the loss of his driver's license. She said her family had no interest in vengeance but wanted the Defendant sentenced to a prison term lengthy enough for him to achieve a sustainable sobriety.

The Defendant's former employer, William Bond, testified that the Defendant had worked for him for five years, beginning while the Defendant was still in high school. He described the Defendant as a young man with an unusually good work ethic and said that he appeared deeply remorseful and depressed following the accident.

The Defendant's father, Bradley Dinguss, testified that the Defendant had been "running a little wild" prior to the accident. After the accident, the Defendant was depressed and remorseful, commenting on more than one occasion that he wished that he

had died rather than the victim. The Defendant had since "found the Lord" and "started straightening up" his life.

The Defendant testified that the victim had been his best friend and roommate. Before the accident, he and the victim had been hanging out together at the lake, where the Defendant drank approximately one-third of a bottle of vodka. The victim had not been drinking but did not want to drive because he did not have a license. The Defendant stated that he had an alcohol abuse problem in the past. He admitted that he had drunk alcohol on special occasions following the accident but said that he no longer drank as heavily as he once had. He testified that he had attended Alcoholics Anonymous meetings for about one month after the accident but quit when the Coronavirus pandemic began. He expressed his remorse to the victim's family and stated that he would change places with the victim if he could.

On cross-examination, the Defendant acknowledged that Beard Valley Road was a heavily traveled road that connected two state highways. He agreed that he had made the conscious decision to take that route home. In the "Personal Statement of the Offense" portion of his presentence report, the Defendant wrote that he took the back road to avoid being pulled over. The presentence report further reflected that the Defendant, who was twenty-years-old with no prior criminal history at the time the report was prepared, reported that he had first used marijuana at the age of thirteen, that he had drunk a few beers with friends on two occasions following the accident, and that he had commonly drunk as many as eighteen to twenty-four beers at a time prior to the accident.

At the conclusion of the hearing, the trial court found two enhancement factors applicable: (1) the Defendant's history of criminal convictions or criminal behavior in addition to those necessary to establish his range, which the court based on the Defendant's admitted marijuana and underage alcohol usage, and that the Defendant had no hesitation about committing a crime when the risk to human life was high, which the court based on the fact that the Defendant made the conscious decision to drive on the back road through a residential area. See Tenn. Code Ann. §40-35-114 (1), (10). The court's finding with respect to enhancement factor (10) reads in pertinent part:

> I think the question I have to answer is, is that road so inherently risky by its nature, by its curvature, by the - - by the homes around it - - did that in and of itself set up a risk that was to human life. I'm go[ing to] find that it does. I want the - - you know, the record, they can review it all day long. That road - - and let's couple it with this. The conscious decision was made to drive on that road to avoid traffic after having [been] drinking. Now, as noble as that might sound, that - - there is a negative to that. When you take the less than well[-]traveled road and go on a back road where homes are, then you

- 3 -

have assumed a certain level of risk that might not have been there on a big road. Now, I think that . . . a decision was made to go on this road that carried its own set of risk factors, and although the main roads may have borne more traffic and more human life, this back road . . . you know, we had people who live there, people that drive there. And, in looking at the language . . . of the enhancement factor, the [D]efendant had no hesitation. I mean, this was a conscious decision to take this. Now, the second part of that is, is there a risk to human life. I'm go[ing to] find that there was, not evident . . . in the testimony, but just the very nature of the road, the residential area, and of course, time of day. So I'm go[ing to] find that . . . some weight should be given to that enhancement factor.

The court gave some weight in mitigation to the fact that the Defendant had no prior criminal record, expressed sincere remorse, had a stable employment history, and had accepted responsibility for his actions. See Tenn. Code Ann. § 40-35-113(13). Based on its weighing of the applicable enhancement and mitigating factors, the court sentenced the Defendant to nine years at 30% in the Department of Correction, one year beyond the minimum sentence for a Range I offender convicted of a Class B felony.

## ANALYSIS

The sole issue the Defendant raises on appeal is whether the trial court erred in applying enhancement factor (10) without proof that there was anyone other than the named victim placed at actual risk of harm. The Defendant concedes that our finding of error may not result in a reversal of his within-range sentence, but argues that the trial court was precluded under established case law, as expressed in State v. Trent, 533 S.W.3d 282 (Tenn. 2017), from applying the enhancement factor based on an assumption of the inherent risk to individuals on the road.

In Trent, our supreme court concluded that a trial court misapplied enhancement factor (10) in a vehicular homicide by intoxication case because there was no proof that anyone other than the victim was put at risk by the defendant's driving while under the influence of prescription pain medications. Id. at 294. Although there was testimony at trial that the defendant narrowly missed striking the front canopy pole of a grocery store three or four hours before the 3:00 p.m. accident and that the defendant may have crossed three lanes of traffic before hitting the victim's vehicle head-on, the Trent court concluded that the enhancement factor was inapplicable because there was no proof in the record that any other person was put at risk by the defendant's offense. Id. at 284, 295. In making this determination, the Trent court cited the long line of cases holding that there must be some evidence of an actual risk to individuals other than the victim, particularly in vehicular assault cases, in which the offense already "'reflects the legislature's appreciation

of the substantial risk of and actual degree of harm that results from DUI caused injury.'" <u>Id.</u> at 294 (quoting <u>State v. Rhodes</u>, 917 S.W.2d 708, 714 (Tenn. Crim. App. 1995)) (additional citations omitted).

While there was evidence in the case at bar that the accident occurred on a curvy section of a road in a residential area near driveways, mailboxes and homes, there was no proof that any resident was in the immediate area of the accident at the time it occurred. Absent some proof that there was an actual risk to someone other than the victim, such as testimony that another motorist was driving in the area or that a resident was collecting his or her mail, enhancement factor (10) is inapplicable. We, therefore, agree with the Defendant that the trial court erred in applying this enhancement factor.

The Defendant does not challenge the trial court's application of enhancement factor (1) and concedes that he received a sentence within the applicable range for his offense. A trial court is granted broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and "sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed. <u>State v. Bise</u>, 380 S.W.3d 682, 706 (Tenn. 2012). We will, therefore, uphold a sentence, even if an enhancement factor has been misapplied, so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles of the Sentencing Act. <u>Id.</u> at 707.

The record reflects that the trial court appropriately considered the evidence, the enhancement and mitigating factors, and the principles of sentencing before imposing the within-range sentence of nine years for the offense. Accordingly, we affirm the sentence imposed by the trial court.

## **CONCLUSION**

Based on our review, we conclude that the trial court erred in applying enhancement factor (10) but that the record supports the nine-year sentence imposed by the trial court. We, therefore, affirm the judgment of the trial court.

_____
CAMILLE R. MCMULLEN, JUDGE

- 5 -